Before STATE INDUSTRIAL BOARD, Respondent.

ISABELLE CHASE, Respondent, *v.* THE ULSTER AND DELAWARE RAILROAD COMPANY, Appellant.

Third Department, March 3, 1926.

Workmen's compensation — death claim by widow who was under sixteen at time of husband's death — claim was not filed within one year — claimant, although mother was living, had no guardian within meaning of Workmen's Compensation Law of 1914, § 116 — claimant is "minor dependent," within meaning of said section, and one-year limitation is not applicable —" next friend," within meaning of said section, is one who has performed services in reference to particular matter.

Claimant's claim is not barred because it was not filed within one year after the death of her husband, for the claimant was under sixteen years of age at the time of her husband's death and she was, therefore, a "minor dependent" within the meaning of section 116 of the Workmen's Compensation Law of 1914 which excepts from the operation of the Statute of Limitations claims by minor dependents who are without a committee, guardian or next friend.

The claimant did not have a guardian in her mother with whom she lived between the date of the death of her husband and the date nearly two years thereafter, when the notice of claim was filed, for, while her mother was her guardian before the claimant was married, the marriage of the claimant operated under section 84 of the Domestic Relations Law to terminate the guardianship and, therefore, at the time of the death of her husband she did not have a guardian.

The claimant did not have a "next friend," within the meaning of section 116 of the Workmen's Compensation Law of 1914, so as to prevent the provisions of that section from operating to suspend the statute, for, while her mother might have performed that duty, a "next friend" is, within the meaning of that section, one who has already performed services for an infant in reference to the matter in hand and not one who might perform them in the future if called upon so to do.

APPEAL by the Ulster and Delaware Railroad Company from an award of the State Industrial Board, made on the 9th day of March, 1925.

*Harry H. Flemming,* for the appellant.

*Albert Ottinger, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondents.

H. T. KELLOGG, J.   The claimant is the widow of Floyd Chase, an employee of the appellant, who came to his death, while in the course of his employment, on the 26th day of May, 1922.   The claimant was then a minor under sixteen years of age.   The claimant filed no claim for death benefits, on account of the death of her husband, until May 19, 1924.   During the interval between the 26th day of May, 1922, and the 19th day of May, 1924, the claimant's mother, Ora Tryon, was at all times living.

It was provided in section 28 of the Workmen's Compensation Law of 1914 (as amd. by Laws of 1918, chap. 634), as that section read in May, 1922, that a right to death benefits was barred unless a claim therefor was filed within one year after the death.   The sole exception to this provision was made by section 116 of the Workmen's Compensation Law of 1914, which then provided as follows: " No limitation of time provided in this chapter shall run as against any person who is mentally incompetent or a minor dependent so long as he has no committee, guardian or next friend."

The point is made that the claimant was not within the exception because not a " minor dependent."   In *Beagle* v. *Groff* (198 App. Div. 453) we held that a minor, claiming compensation for an injury to herself, was not a " minor dependent " within the meaning of the section; that such a dependent was none other than a minor entitled to death benefits under section 16 of the Workmen's Compensation Law.   The law regards a widow, as well as a child under eighteen years of age, as a dependent entitled to death benefits, without evidence of dependency.   This claimant was the widow of the deceased employee and, therefore, a dependent.   She was likewise a minor.   Consequently, we think, she was a " minor dependent."

The point is also made that the claimant had a guardian in the person of her mother, and that, therefore, the exception did not apply.   In *Grillo* v. *Sherman-Stalter Co.* (195 App. Div. 362) certain illegitimate children of a deceased employee, killed in the course of his employment, through their mother filed a claim for death benefits more than one year after the occurrence of the death.   It was held that, as the mother was the guardian of the children, the latter were not within the exception made by section 116, and that their claim was barred.   Mr. Justice WOODWARD, writing for this court, said: " We are of the opinion that the mother of these illegitimate children, as guardian by nurture, had the

right to the custody and control of their affairs." In so writing he relied upon a statement in 3 American and English Encyclopædia of Law (2d ed. p. 888) which reads as follows: " The mother, as guardian by nurture, has the right to the custody and control of her bastard child, until it shall have attained an age when it can, in contemplation of the law, make an election between father and mother." In classifying the mother as a guardian " by nurture " Mr. Justice WOODWARD, notwithstanding the high authority upon which he relied, appears to have been in error. Chancellor KENT says: " And there were three kinds of guardians at common law; viz., guardian by nature, guardian by nurture and guardian in socage." (2 Kent Com. [14th ed.] *219.) Of guardian by nurture he says: " This guardianship is said to apply only to the younger children; who are not heirs apparent; and as all the children inherit equally under our laws, it would seem that this species of guardianship has become obsolete." (Id. *221.) In Words and Phrases it is said: " This form of guardianship cannot exist in this country, because it is applicable only to such children as are not heirs apparent." (Vol. 4, p. 3187.) The authority given for this statement is *Mauro* v. *Ritchie* (16 Fed. Cas. 1171). Corpus Juris says: " Guardianship for nurture was the right of the father or mother to the custody of the person of an infant, not the heir apparent, who was without any other guardian, until the infant reached the age of fourteen. It extended only to custody of the person without any right to custody of the estate. This form of guardianship never existed in this country." (Vol. 28, p. 1061.) Thus it appears that a guardianship by nurture, irrespective of illegitimacy of the ward, might reside in the mother, but that such a guardianship never obtained in this country. The mother in the *Grillo* case, then, must have been either a " guardian in socage " or a " guardian by nature." Corpus Juris says: " In the United States, since there is no tenure in socage, guardianship in socage does not exist, except in New York, where it is recognized in a modified form." (Vol. 28, p. 1059.) That species of guardianship exists in this State only where the minor has acquired real property. (Dom. Rel. Law, § 80.) Neither in the *Grillo* case, therefore, nor in this case was the mother a guardian in socage since in neither case was the minor an owner of real estate. Chancellor KENT says: " Guardian by nature is the father, and, on his death, the mother; and this guardianship extends to the age of twenty-one years of the child; and it extends only to the custody of his person." (2 Kent Com. [14th ed.] *219.) It is stated in Corpus Juris that this form of guardianship " was the right of the father, mother and next of kin, in the order named, to the custody of the person of the heir

apparent." It is then stated that as primogeniture does not obtain here there is no place in this country for a guardianship by nature in its strict sense. It is then said: " What the courts are sometimes pleased to term ' natural guardians ' is a term of altogether different signification. In America the term is applied to all the incidents of the common-law guardianship by nature, except that of confining it to the heir apparent." (Vol. 28, p. 1059.) The mother in the *Grillo* case, therefore, was a guardian by nature rather than a guardian by nurture. It is important to make the distinction since otherwise it might be thought that, in that case, there was a guardianship of an exceptional type, due to · the special circumstance of illegitimacy. The decision in the *Grillo* case was affirmed in 231 New York, 621. The case is an authority for the propositions that a common-law guardianship by nature still survives in this State; that it may fall to the mother; that, in our case, the claimant, prior to her marriage, had a natural guardian, assuming that her father was dead, in the person of her mother. Guardianship by nature, at the common law, extended only to the person of the child. (*Combs* v. *Jackson*, 2 Wend. 153; *Hyde* v. *Stone*, 7 id. 354; *Fonda* v. *Van Horne*, 15 id. 631.) In the last case cited it was said by BRONSON, J.: " He was guardian by *nature* to the plaintiff, but this guardianship only extended to the *person* of his daughter, and gave him no control over her property, real or personal." However, although the mother in our case may at one time have been the guardian by nature of the person of her daughter, that guardianship ceased when the daughter became a married woman. (*Matter of Brick*, 15 Abb. Pr. 12; *Matter of Whitaker*, 4 Johns. Ch. 378; 28 C. J. 1097.) In *Matter of Brick* one of the headnotes reads: " The marriage of a female ward terminates the guardianship; though it is otherwise of the marriage of a male ward." The law of guardianship by nature, at the common law, with a single modification, is declared by section 81 of the Domestic Relations Law, wherein it is provided as follows: " A married woman is a joint guardian of her children with her husband, with equal powers, rights and duties in regard to them." The modification lies in this: that the mother, in spite of the existence of a father, is made a guardian equally with her husband. The provision cited was not applicable in the *Grillo* case for the reason that the mother, who was held to be a guardian, was not " a married woman " who had a " husband." (*Matter of Tombo*, 164 App. Div. 392.) The fact, however, that the mother was held to be a guardian conclusively establishes that the statutory provision quoted is not exclusive; that a common-law guardianship by nature, with all its incidents except as modified by statute, still continues; that

the provision quoted, in so far as it does not conflict, is declaratory of the common law.   This is necessarily so för the statute, while declaring a guardianship on the part of a mother or father, is silent as to the powers and duties of the guardians.   The guardianship, then, continues solely as a guardianship of the person and is terminated by the marriage of the ward.   The Domestic Relations Law, in section 84, states: " The lawful marriage of a woman before she attains her majority terminates a general guardianship with respect to her person, but not with respect to her property." If the guardianship of the father and mother, declared by section 81, is a " general guardianship " and the provisions of section 84 apply to such a guardianship as is found in the case at bar, then the guardianship of this mother, under the terms of the section, since it was a guardianship of the person only, terminated upon the marriage of the claimant.   On the other hand, if the section does not apply then there was a termination of the guardianship by force of the common law.   In any event, therefore, we think that the claimant, during the interval between the death of her husband and the filing of her claim was without a guardian, and consequently, under the provisions of section 116 of the Workmen's Compensation Law of 1914, her right to death benefits was not barred by a failure to file a claim therefor within one year.   (See, also, Workmen's Compensation Law of 1922, § 115.)   It is suggested that, even though the claimant had no guardian, she, nevertheless, within the meaning of section 116, had a " next friend."   Bouvier's Law Dictionary (Rawle's 3d Rev.) defines " next friend " as follows: " One who, without being regularly appointed guardian, acts for the benefit of an infant, married woman, or other person not *sui juris.*"   Words and Phrases (2d Series), citing *Williams* v. *Cleaveland* (76 Conn. 426), says: " The guardian and next friend, in conducting a civil action, are a ' species of attorney, whose duty it is to bring the rights of the infant to the notice of the court,' and the authority of each is limited to the proceeding in which he is appointed." A next friend, therefore, is one who has *already* performed services for an infant, in reference to the matter in hand, and not one who *might* perform them in future, if called upon so to do.   If it were otherwise, then, since every infant has a next friend in prospect, the exception created by section 116 of the Workmen's Compensation Law of 1914 would have no effect.   We think that the claimant was without a " next friend " within the meaning of the section.

The award should be affirmed, with costs to the State Industrial Board.

Award unanimously affirmed, with costs to the State Industrial Board.