In the Matter of the Adoption of CHARLES MARINO.

Surrogate's Court, Bronx County, June 15, 1938.

*Samuel Wasserman,* for the petitioners.

*Thomas F. McCarthy,* for the respondent.

HENDERSON, S. The petitioners seek approval of their adoption of a child born August 1, 1937. Notice of the application was duly given to the child's mother, who now opposes the adoption. The husband of the mother was not the child's father.

On August 13, 1937, more than nine months prior to this application, the petitioners received the child from his mother, and he has resided with them continuously since that date.

On August 24, 1937, the child's father and mother and the petitioners executed a formal agreement and consent to the adoption of the child by the petitioners and to a change of the child's name. Under the established facts, no consent of the father was or is necessary. (Dom. Rel. Law, § 111, subd. 3.) This written consent was not acknowledged by the mother, although she admits that she signed it. Hence it cannot be considered as the consent required by the statute. (Dom. Rel. Law, § 112, subd. 2; *Matter of Dein,* 135 Misc. 244.) Simultaneously with the execution of the agreement the mother signed and verified her affidavit. With the exception of the formal parts and the names, which I have deleted from this opinion, it reads as follows:

" (name of mother) being duly sworn deposes and says: That she is the mother of (name of child), an infant and that she has read the foregoing petition and agreement and knows the contents thereof and that the same is true to her own knowledge. That the father of said infant is (name of father).

" That deponent is surrendering the child to (names of petitioners) in view of her inability to support said infant and give the said infant the proper care and attention that an infant of that age requires."

The investigation herein discloses that the petitioners are, in all respects, proper persons to adopt the child, and my examination of them upon the hearing confirms the investigator's written report. I am also convinced that the moral and temporal interests of the child and his future happiness will be promoted by such adoption. While these facts are essential to an approval of the adoption, they are foreign to the issue of abandonment. (*Matter of Bistany,* 239 N. Y. 19, 24.) Whether or not the mother's consent must be obtained before the adoption may be approved depends upon the determination of that issue. (Dom. Rel. Law, § 111.)

Since the delivery of the child to the petitioners and the execution of the agreement and the affidavits above noted, the mother has

done nothing towards reclaiming or even seeing the child until her opposition to the present application. The mother did not give her address to the petitioners at any time prior to this proceeding. She knew the address of the petitioners at the time she surrendered the child to them. While the petitioners moved from that address and the mother testified that she did not know where to locate them, the name of the proposed foster father was in the Bronx telephone directory at all times, the child's father, with whom the mother has maintained friendly relations, knew the address, and the mother's sister called there on the pretext that she was a court investigator.

The consent of the petitioners to take the child for adoption was obtained by the efforts of the child's father through the intervention of a common acquaintance, who brought the petitioners and the mother and father of the child together for that purpose.

Since the petitioners have had the child they have nursed him through a severe illness with loving care and at substantial financial expense.

A number of credible witnesses have testified that they called the mother by telephone to persuade her to consent to the adoption. These telephone calls were made at the home of a sister of the mother with whom she is presently sojourning. The mother denies receiving these calls, but the sister admits speaking to these witnesses and that she represented herself as the child's mother. On each of these occasions various sums from $200 to $600 were demanded as the price of the mother's consent. I believe such demands were made, although the sister denied making them.

The writings and conduct of the mother manifest her intention to abandon the child and to renounce all rights and duties of parenthood forever.

A mother who gave away her child with a much less formal consent was held to have abandoned it within the intendment of the statute. (*People ex rel. Lentino* v. *Feser*, 195 App. Div. 90, 93, 97.)

I find that the mother deliberately abandoned the child on August 13, 1937, with full knowledge of the effect thereof, and that such abandonment has been continuous ever since. Her consent is not necessary.

The adoption is approved.

Proceed accordingly.