DOROTHY CARUSO, Plaintiff, *v.* VINCENT CARUSO, Defendant.

Supreme Court, Special Term, Bronx County, November 15, 1940.

*Milton W. Levy,* for the plaintiff.

*Thomas Cartelli,* for the defendant.

HAMMER, J. This application is made by Dorothy Schlossareck by way of affidavits and order to show cause. She was the plaintiff in the above-entitled action in which, on or about the 5th day of March, 1937, this court granted a decree of absolute divorce to her

from the defendant Vincent Caruso. By the judgment custody of Richard Caruso, the infant son of the marriage, was awarded to the plaintiff, with right of visitation at all reasonable times to the defendant, who was ordered to pay three dollars and fifty cents per week for the support and maintenance of the child. The child was born November 21, 1930. The mother married her second husband on or about July 18, 1937.

The order requires the defendant to show cause why an order should not be made, granting the consent of the court to the adoption of the child by William J. Schlossareck, the second husband. The child has always been with his mother and since her second marriage has been provided for, supported and maintained in the new family as if he were the offspring thereof. Although the divorce was granted for the guilt of the father, he has co-operated in the upbringing of the child amid natural family surroundings in the new home, at least to the extent of suggesting that he himself assume the role and name of " Uncle " and the second husband that of " Father." The child calls the latter " Father " and acts toward him as if he were the natural male parent. It is not questioned that there is a reciprocal parental and filial feeling existing and that the stepfather has, to the best of his ability, provided for the support and maintenance of the child.

The Schlossareck family resides in New Jersey and the second husband is applying there for the adoption by him of the child. The father at first stated in writing that he would give his consent but has since withdrawn same and has appeared in and opposed the present application. In any event, subdivision c of section 4 of chapter 3 of title 9 of the Revised Statutes of New Jersey (1937) requires, and the Orphans' Court in which the petition was presented has directed, that a petition be made for the consent of this court, as the consent of the father was not presented and this court had granted the divorce and made the award of custody.

This court in its consideration of the application for its consent will be guided solely by a consideration of the policy of the laws of New York had the application for adoption been presented to a court of New York. This is so for the reason that in matters of adoption the basis thereof as now understood is entirely statutory. (*Carpenter* v. *Buffalo General Electric Co.*, 213 N. Y. 101, affg. 155 App. Div. 655; *Matter of McRae*, 189 N. Y. 142, affg. 118 App. Div. 907; *United States Trust Co.* v. *Hoyt*, 150 id. 621; *Carroll* v. *Collins*, 6 id. 106.) Adoption is a status created by the State and not merely a contract between the natural parents and adoptive parents. (*Matter of Ziegler*, 82 Misc. 346; *Matter of Johnston*, 76 id. 374.) The New York statute (Dom. Rel. Law, § 111) requires the consent

of the parents of a legitimate child, and of the mother of a child born out of wedlock, to a legal adoption unless such a parent has abandoned the child, is deprived of civil rights, or divorced because of his or her adultery, or cruelty, adjudged insane, a habitual drunkard, or deprived of custody of the child for cruelty or neglect. To confer jurisdiction on the court in adoption proceedings, consent of the father of a legitimate child must be obtained or the fact of the father's abandonment must be shown. There is no abandonment where the father evidences interest in the child and reserves his right to custody even though the support is furnished by a relative or stepfather with whom the child resides. (*Matter of Marks,* 159 Misc. 348.)

The natural rights of each parent to his or her child being recognized as sacred, they are jealously guarded and accorded full protection by law. The rights of the parent in the child are paramount. After adoption the excised parent is relieved from parental duties and responsibilities, and deprived of parental rights over the child in his property and to those of descent or successorship. (Dom. Rel. Law, § 115; *Matter of Pierro,* 173 Misc. 123.) In an adoption the statute creates the relationship of parent and child and the adopting parent under law is required to bestow parental care upon the child, with all the duties and responsibilities attaching to that relation and status. (Dom. Rel. Law, § 115.) In New York the rights thus created in any other State by the law of comity are regarded as though the adoption occurred here. (*Matter of Leask,* 197 N. Y. 193, affg. 130 App. Div. 898.) By comity, also, a judgment of divorce binding on the parents here is recognized in the jurisdictions of all other States as conclusive of the issues therein determined, among which are the rights and obligations of custody, care, support and visitation. Undoubtedly, this is the reason behind the requirement of the consent of this court to the application for adoption presented in another State. The child is the ward of this court. Its custody is with the one parent rather than the other by virtue of the judgment of this court. That custody may be changed, enlarged or modified by amendment of the judgment. Until then, the present provisions are in force and binding. The New York court seems to be asked to consider whether those provisions of its judgment have not been observed by the non-consenting parent and performance thereof neglected or refused to an extent which would move the court to a finding of conduct equivalent to an abandonment by such parent of the child.

While promotion of the interests of the child is essential to approval of an adoption, the natural right of the parent will not be interfered with, even to better the moral and temporal welfare of

the child, against the right of an unoffending parent. (*Matter of Marino*, 168 Misc. 158; *Matter of Cohen*, 155 id. 202.) Against the opposition of a divorced father adoption will not be granted (*Matter of Metzger*, 114 Misc. 313) unless abandonment is shown. (*Matter of Munzel*, 160 id. 508.) Under New York law, a court may only waive a consent required by law where the minor is eighteen years of age. (Dom. Rel. Law, § 111; *Ryan* v. *Sexton*, 191 App. Div. 159, revg. 108 Misc. 224.) The cases in New York are rare in which against the consent and over the objection of a divorced parent the court has granted an adoption. In *Matter of Munzel* (*supra*) the father of the child had never contributed to his support except on two occasions when he was brought into the Children's Court and compelled to make payments. The payments made were all he ever contributed since the divorce to the support of the child and he never sent a present or did anything for the child and he refused a promise of future support. " The term ' abandonment ' means neglect and refusal to perform the natural and legal obligations of care and support. If a parent withholds his presence, his love, his care, the opportunity to display filial affection and neglects to lend support and maintenance, such a parent relinquishes all parental claim, and abandons the child." (*Matter of Hayford*, 109 Misc. 479, citing *Matter of Larson*, 31 Hun, 539.)

It has been held as the policy of the State of New York that in order to grant a petition for adoption without the consent and over the objection of a parent, it must be shown that such parent has abandoned the child, so that the consent was unnecessary, by such evidence that even though the parents be given the benefit of every controverted fact, a finding of abandonment follows as an inference of law. (*Matter of Bistany*, 239 N. Y. 19, affg. 209 App. Div. 286, which reversed 121 Misc. 540.) There it was held that the silence and inaction of the parent refusing consent must be prolonged to such a point that the intention to abandon the child must be inferred as matter of law.

The testimony given upon the present application was only to the effect that the natural father did not frequently visit the child, that he only contributed money or gave presents at holiday times and did not contribute the amount of three dollars and fifty cents weekly required by the judgment of divorce. The facts in relation to the weekly payments, however, were that the divorced father was infrequently employed and for a considerable time had a W. P. A. job or was on relief, and that the stepfather willingly maintained and supported the child of his own feeling of affection. No demand was shown to have been made upon the divorced father for the support of the child and no steps were taken to compel the payment;

while no waiver was shown, a tacit understanding of no compulsory requirement for payment seems to have existed.

Undoubtedly, the natural father and the members of his family, including his parents and his sister, have a great natural feeling of affection, love and devotion towards the child, although the father is shown derelict in his expression of affection by his failure to make material contribution to the child's support. The father has also exhibited a paternal willingness to curtail his own interest for the benefit of the child by his effort to eliminate his personality so that the child, for the present at least, will be raised in natural home surroundings, undisturbed by misgivings as to the identity of his father. The reason given for withholding consent after expressing willingness to give same is that shortly there is expected the arrival of an offspring of the second marriage — a change in the second family status which the father and his relatives, whether rightly or not, think may effect a change of attitude in respect to the first child. The father states that he does not wish to lose the natural affection and claim upon the love of his child and he does not desire the child to be cut away from natural affection, love, devotion and interest on his part as well as upon the part of the child's paternal blood relatives.

Undoubtedly, the child is now in happy home surroundings. The new family resides in a new Cape Cod cottage and the child has his own room. The home is located upon a fair plot of ground in a suburban rural community. The second husband has steady employment, is apparently industrious and of excellent habits, and earns a steady wage of $34.50 a week. There are no religious differences.

Under all the circumstances, if the natural father could bring himself to consent to the adoption, the interest of the child may be expected to be enhanced. However, while promotion of the interest of the child is essential to approval of adoption, the natural right of the parent will not be interfered with even to better the moral and temporal welfare of the child against the right of an unoffending, non-consenting or objecting parent. (*Matter of Marino, supra.*)

Application denied. No costs.