In the Matter of the Application for the Adoption of ANN
LESLIE MENDELSOHN, an Infant.

Surrogate's Court, Westchester County, January 22, 1943.

*Charles Korn* for Joseph D. Farkas and Florence Selma Farkas, petitioners.

*Aaron Maze* for Reave M. Rosenthal and Arnold B. Rosenthal, respondents.

MILLARD, S. Petitioners, the maternal grandparent of the infant and his wife, seek to adopt the only issue of a deceased daughter, a female infant under the age of fourteen. The application is opposed by a sister of the deceased father of the infant, and her husband, testamentary guardians of the property and person of the infant.

Most of the facts are undisputed. The infant in question is the sole issue of Ruth and Leonard Mendelsohn who were lawfully married on March 15, 1935. After residing in the State of New York for approximately six years, during which period the infant was born, the parents moved to the State of New Jersey establishing their residence in New Brunswick. Thereafter the mother became ill and died on September 12, 1941. During the last illness of the mother in August, 1941, and in accordance with the wishes of both parents, the infant went to live with her grandfather and his wife in the city of New Rochelle, Westchester County, New York, where she has resided continuously ever since. After the death of the mother, the father of the child gave up the home formerly occupied by them in New Brunswick and thereafter lived in a rented room in New Brunswick where he was employed. From the date of death of his wife to the date of his demise he was a frequent visitor and guest at both the home of his sister in New Brunswick and his father-in-law in New Rochelle. On April 28, 1942, the father of the child died leaving a last will and testament dated September 26, 1941, which was probated in the Surrogate's Court of Middlesex County, New Jersey, on May 9, 1942. In and by said will the father appointed his father-in-law, Joseph D. Farkas, one of the petitioners herein, his sister, Reave M. Rosenthal, his brother, Robert E. Mendelsohn, and his brother-in-law, Arnold B. Rosenthal, executors and testamentary guardians of the property and person of his daughter. Letters testamentary and letters of testamentary guardianship were issued by said Surrogate's Court to Reave M. Rosenthal, Robert E. Mendelsohn and Arnold B. Rosenthal, on May 9, 1942. The petitioner Joseph D. Farkas failed to qualify either as executor or testamentary guardian. The petitioner Joseph D. Farkas is the sole surviving grandparent.

Under these circumstances the respondents Reave M. Rosenthal and Arnold B. Rosenthal in their capacity as testamentary guardians of the person of the infant (Robert E. Mendelsohn not appearing) not only refuse to consent to, but have strenuously opposed, the application on the ground that as testamentary guardians of the person of the infant they have " lawful custody " of the child within the meaning of the governing statutes and that this court has no authority to grant the adoption without their consent and, further, that the grandfather does not have " lawful custody." They further contend that since the domicile of an infant is that of her surviving parent (*Matter of Thorne,* 240 N. Y. 444; *Russell's Case,* 64 N. J. Eq. 313), the infant was legally domiciled in the State of New Jersey at the time of her father's death and, both parents being deceased, she is a ward of the State of New Jersey and subject to the exclusive jurisdiction of its courts. Answering the second contention first, it is well established that the residence of the foster parents in this county at the time of the institution of this proceeding conferred jurisdiction upon this court. (Domestic Relations Law, § 112, subd. 1 [all statutory references are to the Domestic Relations Law].)

A determination of the remaining question as to " lawful custody," however, is not without difficulty. It is well settled, of course, that adoption was unknown to the common law (*Matter of Thorne,* 155 N. Y. 140; *Carpenter* v. *Buffalo General Electric Co.,* 213 N. Y. 101) and, being a creature of the statute, exact compliance with the statutory requirements is imperative. (*Matter of Cohen,* 155 Misc. 202; *Matter of Anonymous,* 178 Misc. 142.) Unless, therefore, petitioners comply with the provisions of article 7, I have no power to grant the petition. Section 111 provides in part that " * * * consent to adoption shall be required as follows: * * * 2. Of the parents or surviving parent of a child born in wedlock; * * * 4. Of any person or authorized agency having lawful custody of the foster child." Both parents of this infant being dead, subdivision 4 applies. It is clear that I have no authority to dispense with the prescribed consent except in the instances set forth in section 111, none of which exists in the instant case. (*Ryan* v. *Sexton,* 191 App. Div. 159; *Caruso* v. *Caruso,* 175 Misc. 290.)

In view of the refusal of the respondent testamentary guardians to consent to the proposed adoption, petitioners' application must be denied unless it can be said, as a matter of law, that the petitioning grandfather has " lawful custody " of the child within the meaning of the term as employed in subdivision

4 of section 111. "Lawful custody" is defined in subdivision 6 of section 109, as follows: " * * * a custody (a) specifically authorized by statute or (b) pursuant to judgment, decree or order of a court or (c) otherwise authorized by law." Certainly the custody of the grandfather was not "specifically authorized by statute" or "pursuant to judgment, decree or order of a court." That leaves for determination only the question of whether such custody was "otherwise authorized by law." It is undisputed that the grandfather did not obtain custody of the child illegally, but that on the contrary the father voluntarily placed the child in his home for the limited purpose of bringing her up, but admittedly not for adoption. Do the circumstances, as hereinabove outlined, constitute petitioner Joseph D. Farkas lawful custodian of the child within the purview of section 111, subdivision 4? I think not. The testimony clearly indicates that the father did not relinquish any of his paternal rights and in addition thereto was a frequent visitor at the home of his father-in-law during the period in question, displaying the customary fatherly affection toward his daughter. It can therefore be said that during the lifetime of the father the principles enunciated both by our courts (*Matter of Thorne*, 240 N. Y. 444) and by the New Jersey courts (*Russell's Case, supra*) were controlling, thereby making the domicile of the child that of her last surviving parent. Furthermore, I am satisfied, from the testimony herein, that the father died a resident of and domiciled in the State of New Jersey. It follows, therefore, that prior to the death of her father the infant, although residing in this county, was domiciled in New Jersey. The grandfather contends, however, that upon the death of the father he became the natural guardian of his grandchild and the child's domicile was thereby transferred to this State. Petitioner further contends that as such natural guardian his consent to the proposed adoption is a sufficient compliance with the statutory requirements. I cannot agree with this contention. The status of natural guardians is governed by the common law in most States; in this State at least there is no statutory provision recognizing such office. Prior to the enactment of section 81, the law was well settled in this State that during the joint lives of parents the father of legitimate issue was the natural guardian (*Wilcox* v. *Wilcox*, 14 N. Y. 575); upon his death both by common law and statute the mother becomes such guardian. (§ 81; 2 Kent Com. [14th ed.] 220; 28 C. J., Guardian and Ward, § 6; 1 Schouler on Marriage, Divorce, Separation, and Domestic Relations [6th ed.] p. 916; *Grillo* v. *Sherman-Stalter Co.*, 195

App. Div. 362, affd. 231 N. Y. 621; *Chase* v. *Ulster & Delaware Railroad Co.,* 215 App. Div. 581.) Where, however, both parents are dead there is an apparent conflict of authority as to whether anyone can claim the guardianship by nature. (25 Am. Jur., Guardian and Ward, § 7; 28 C. J., *supra; Sudler* v. *Sudler,* 121 Md. 46.) The rights of grandparents, who are next of kin, to succeed to the natural guardianship of orphaned grandchildren have been recognized in some jurisdictions for certain purposes. (*Lamar* v. *Micou,* 114 U. S. 218; *Holmes* v. *Derrig,* 127 Iowa 625; *Matter of Waite,* 190 Iowa 182; *Smith* v. *Young,* 136 Mo. App. 65.) In the *Matter of Application of Daniels* (71 Hun, 195) the Appellate Division of this Department refused, however, to recognize the status of a grandparent of an orphaned infant under fourteen years of age as a natural guardian empowered to effect a change of residence of the infant. If the status of a grandparent as a natural guardian is not recognized for the limited purpose of effecting a change of residence, then this court should not recognize a grandparent as one who may effectively consent to an adoption. As hereinabove stated, the grandfather's custody is not " * * * (a) specifically authorized by statute, or (b) pursuant to judgment, decree or order of a court." Since grandparents may not succeed to the natural guardianship of orphaned grandchildren (*Matter of Daniels, supra; People ex rel. Marabottini* v. *Farr,* 33 N. Y. S. 2d 600 [not officially reported]) the custody of a grandparent is not " otherwise authorized by law." (§ 109, subd. 6.)

Furthermore, it was clearly inferred, if not definitely held, in *People ex rel. Marabottini* v. *Farr* (*supra*) " lawful custody " is synonymous with guardianship of the person, either testamentary or general. There the last surviving parent of an infant under fourteen left a will in which he designated the child's paternal grandfather as guardian of her property but not of her person. The child was adopted upon the consent of the paternal grandparents without notice to the maternal grandmother. In holding that the adoption was void Justice PERSONIUS said (p. 603): " * * * but the infant had no lawful custodian, no guardian of her *person,* who could give the consent required by section 111, subdivision 4. This, it seems to us, was a vital defect. The infant, being under fourteen, could not consent. She was represented by no lawful custodian who could." And further (p. 605) the learned justice said " * * * that in fact said infant had no lawful custodian * * *." I am in accord with these views. There being no guardian of the person, general or testamentary, consenting to

the proposed adoption, I am compelled, as a matter of law, to deny the application.

The respondent testamentary guardians having refused to consent to the proposed adoption, it is unnecessary to pass upon the question as to the validity of the New Jersey probate decree under and pursuant to which they derived their authority or the extraterritorial authority of such testamentary guardians.

The application is denied.

Settle order.