THE PEOPLE OF THE STATE OF NEW YORK ex rel. ANONYMOUS, Relator, against ANONYMOUS, Defendants.

Supreme Court, Special Term, Kings County, August 4, 1949.

*Paul J. Kern* and *Mortimer J. Greif* for relator.

*Joseph M. Stein* for defendants.

DI GIOVANNA, J.   This is an application by relator, an unwed mother, for return of her infant child who is presently in the custody of the defendants.

In February, 1948, relator, a student at a college in the city of New York, finding herself pregnant, sought out the services of a woman doctor in Manhattan, to whom she gave an incorrect name.   Although from a family consisting of a father and seven brothers and sisters, she did not inform any of them of her condition.   The doctor, anxious to assist the relator, aided her in concealing the facts from her family.

On October 5, 1948, the infant was born at a hospital in New York City.   During the prenatal treatments by the aforesaid doctor, the relator, still afraid to disclose her condition to her family, had lengthy conversations with the doctor concerning the possibility of giving the child away for adoption. On October 9, 1948, through the efforts of a nurse of another doctor — a friend of the attending doctor — the child was given to the defendants for adoption.   An attorney represented the proposed adopting parents, who did not see the child until they actually received her.   In conformance with subdivision 3 of section 111 of the Domestic Relations Law the relator executed a consent to the adoption.   Subdivision 7 of section 112 of the Domestic Relations Law requires: " * * * no order of adoption shall be made until such child has resided with the foster parents for at least six months   * * * ".   No final order of adoption has in fact been made.

The relator, seeking to get away from the entire episode, and still afraid to disclose the facts to her family, obtained a temporary position in Nassau, Bahama Islands, from December to March, 1949.   In April, 1949, she met her sisters in Miami Beach, Florida, and for the first time divulged her secret.   Her family rallied to her aid and told her that they would stand by her financially and morally if she would take steps to obtain the baby.

At the hearing, the relator's brother, a married man with two children, residing in New York City, advised the court that he is prepared to make a home for the relator and the child if the court will award custody to the relator. Relator herself is now gainfully employed, earning $45 per week.

The defendants oppose this application, firstly, on the ground that the consent of the relator was not necessary because she abandoned the child; secondly, because they had become so attached to the child and the child to them, that the welfare of the child will best be served by not changing custody; and thirdly, that their interest in the child is paramount to that of relator.

The court finds that the relator did not abandon the child as a matter of fact and law; that the consent executed in the attorney's office representing the proposed foster parents eliminates the question of abandonment.

Before adoption can legally take place under the circumstances of this case, the consent of the natural parent must exist at the time of the final adoption proceedings. The revocation of the consent prior to the final adoption proceeding prevents the final consummation of the adoption proceeding (*People ex rel. Flannagan* v. *Riggio,* 193 Misc. 930). The fact that the defendants have expended large sums of money in nurturing this child and have developed a great love does not permit this court, in the absence of unusual circumstances, to deprive the natural parent of her legal right to custody. In *People ex rel. Flannagan* v. *Riggio* (*supra,* pp. 932, 933), Justice HILL said: " I am convinced that the defendants will suffer untold mental anguish should they be required to surrender the child — which is to be regretted — but they have known or should have known that the mother might change her mind at any time within six months. * * * Parents have the natural, God-given right to the control and custody, of their children ". In *Matter of Donnelly* (70 Misc. 584, 586) the court said: " But, such an agreement as was here made by this mother, considering the circumstances in which she was placed at the time, should not be held against her, when she evinces the natural desire to reobtain her child and a willingness and an ability to care for it as well. The relation of mother and child is paramount to all other considerations here shown, and the humane and just thing to do is to give her back her child ".

It would be fruitless to permit the conditions to exist until the determination of the adoption proceedings because, consent having been revoked, there can be no legal adoption. Surrogate

SAVARESE, of Queens County, in *Matter of Burke's Adoption* (60 N. Y. S. 2d 421, 422–423), said: " It is the opinion of this Court that a surrender and consent is not final, even though perfected before the surrogate, if it occurs within the six months probationary period prescribed in Sub. 7, Sec. 112 of the Domestic Relations Law unless an order of adoption has been made in conformity with said section." The fact that the revocation in this case took place in about seven months is of no moment because the final order of adoption had as yet not been applied for.

Surrogate MILLARD, of Westchester County, in *Matter of Anonymous* (178 Misc. 142) held similarly.

The petitioner having realized her early mistakes is now in a position to assume the role of natural guardian. There is no doubt that all of the persons involved have acted in good faith and with an intention to do what was best for the child involved. But the loss to the prospective foster parents cannot prevent the return of the child to the relator. In taking a child for adoption under these circumstances they assumed the risk of possible revocation before the expiration of the statutory period and the entry of a final order in the Surrogate's Court.

Accordingly the motions to dismiss the writ at the close of relator's case and at the close of the entire case are denied and the writ is sustained. The defendants are directed to return the infant to the relator on Wednesday, August 10, 1949, at 1:00 P.M., at the office of the attorney for the defendants.

The court further orders that the papers in this case together with the decision herein be filed in the County Clerk's office and sealed. No persons other than the parties hereto or their duly authorized attorneys may hereafter inspect the same except by order of the court. Submit order.