In the Matter of the Adoption of ANONYMOUS. ANONYMOUS et al., Appellants; ANONYMOUS, Respondent.

Second Department, June 13, 1955.

' *Patrick H. Sullivan, Bernard L. Sanoff* and *John V. Thornton* for appellants.

*Sidney M. Spero, Edwin N. Charnin* and *Mark Riegel* for respondent.

NOLAN, P. J.  On this appeal from an order in an adoption proceeding, which directs the cancellation of respondent's consent to the adoption and the dismissal of the petition for adoption, the primary contention by respondent is that she had an absolute right to withdraw her consent at any time before the expiration of the six-month waiting period provided by section 112 of the Domestic Relations Law.

Respondent is the natural mother of an infant daughter, born out of wedlock.  Appellants are the foster parents named in the petition for adoption presented to the Surrogate of Queens County.  The infant, sought to be adopted, was born in October, 1953, at a hospital in New York City.  About a week later, respondent delivered the child to appellants, having made arrangements to do so several months before.  Thereafter, and in December, 1953, an agreement was entered into between

respondent, as the natural mother, and appellants, as foster parents, by which appellants agreed to adopt the child, and to assume all the obligations which would follow such adoption, and respondent approved and consented to the adoption and agreed to acquiesce therein and to refrain from doing anything thereafter which would interfere with the rights, duties and privileges of the child. At the same time, she executed and swore to an affidavit, in which she again consented to the adoption, and stated that she had received nothing of value nor any money for her consent to place the child with the foster parents. (See Penal Law, § 487-a, and Social Welfare Law, § 374.) The agreement and affidavit were presented to the Surrogate on the filing of the petition and respondent appeared before the Surrogate, acknowledged the agreement, and again swore to the affidavit before him. Apparently her consent, as embodied in the agreement and affidavit, was freely and voluntarily given and, as the learned Surrogate found, was the result of deliberation and considered judgment. Shortly afterward, according to the testimony of the foster father, respondent communicated with him and threatened that she would take her baby back unless he paid her $1,000 for the final relinquishment of her parental rights. The foster father complained to the District Attorney of Queens County. As a result of his complaint, telephone conversations between the foster father and respondent were monitored by a detective attached to the District Attorney's office, who recorded the conversations with the foster father's consent as they were heard over his telephone. Concededly, no court order authorizing this procedure was obtained. The recording is printed in the record, and is clearly open to the interpretation that respondent was demanding money from the foster parents as the price of her continued consent to the adoption. Thereafter, respondent was questioned at the District Attorney's office concerning the conversations, and subsequently thereto moved before the Surrogate for permission to withdraw her consent. In her affidavit she stated that although she had told the foster father that she felt that she could give up her child, she had changed her mind and wanted the child returned to her. She also asserted that the foster father had offered her money to go to Florida in an attempt to dissuade her when she suggested to him that she wanted her child back. At the time she signed the consent, according to her petition, she was morose, desperate and disturbed, and not represented by counsel. At the hearing before the Surrogate, appellants contended that respondent's applica-

tion was made because they had refused to accede to her demands for money. Respondent testified that she had made no such demands, but that on the contrary the offer of money was made by appellants after she had demanded the return of the child. The Surrogate refused to hear the recording of the monitored telephone conversations offered in support of appellants' claim. He found that respondent was not actuated by the desire for money in demanding the return of her child, permitted her consent to be withdrawn, and dismissed the petition for adoption.

It is respondent's position on this appeal, although she denies that she demanded money from appellants, that in any event and regardless of her motive, she had an unqualified right to revoke her consent within the six-month period provided by the statute. It is our opinion that she had no such right. The Domestic Relations Law, insofar as it relates to the adoption of children, makes no provision for the revocation of a consent, given and presented as provided in sections 111 and 112 of that statute. However, although there has been some division of opinion as to whether or not the consent may be withdrawn as a matter of right (see *Matter of Anonymous,* 198 Misc. 185), it has been generally held in this State, when the question has arisen, that the authority of the county judge, or surrogate, before whom an adoption proceeding may be pending, to permit such a revocation may be inferred from the statutory provisions, and revocations of consents to adoption have been recognized as permissible under varying circumstances. (See *Matter of Cohen,* 155 Misc. 202; *People ex rel. Anonymous* v. *Anonymous,* 195 Misc. 1054; *Matter of Burke,* 60 N. Y. S. 2d 421; *People ex rel. Harris* v. *Commissioner of Welfare,* 188 Misc. 919; *Matter of Anonymous,* 178 Misc. 142; *Matter of Anonymous,* 198 Misc. 185, *supra; Matter of Gardner,* 279 App. Div. 615; *Matter of Kropp,* 279 App. Div. 934, and *People ex rel. Kropp* v. *Shepsky,* 305 N. Y. 465, 469.)

We are in accord with the view that the consent of a natural parent to an adoption is not irrevocable, and with the opinion expressed by the Appellate Division in the Third Department, that the six-month period provided by subdivision 7 of section 112 of the Domestic Relations Law was intended for the benefit of all parties in an adoption proceeding, including the natural mother. (*Matter of Bruce* [*Atkins*], 269 App. Div. 718, 791, affd. 295 N. Y. 702.) It does not follow, however, that a duly acknowledged consent, made part of a solemn contract presented in a

judicial proceeding, may be revoked at the will of the mother, merely because she has experienced a change of mind. (See *People ex rel. Harris* v. *Commissioner of Welfare, supra.*) That contention was rejected by this court, although we wrote no opinion thereon, in *Matter of Bonsall* (277 App. Div. 1049). The adoption agreement, although necessarily contingent on the Surrogate's approval, was valid and enforcible against the foster parents (*Middleworth* v. *Ordway,* 191 N. Y. 404; *Gavin* v. *Aitken,* 258 N. Y. 595; *Miller* v. *Elliott,* 266 App. Div. 428), subject of course to such defenses as might be available to relieve them of their obligations. We need not determine whether the mother had any *right* to be relieved of her agreement except on grounds similar to those which would be sufficient to release the foster parents. It is for the Surrogate to decide, in the exercise of his discretion, on consideration of all the circumstances, and notwithstanding the consent, whether the adoption will be approved, and it may not be approved unless he is satisfied that the moral and temporal interests of the foster child will be promoted thereby (Domestic Relations Law, § 114) and except under unusual circumstances, until the expiration of the statutory waiting period (*Matter of Bruce [Atkins], supra*). Neither the natural mother nor the foster parents have any rights in the foster child, which are in any way similar to property rights, which the courts would be required to enforce. It is our opinion, therefore, that although the mother may have no right to condition her consent on a subsequent change of mind, the Surrogate may, in the exercise of his discretion, and on consideration of all the circumstances, relieve her of her agreement and permit the consent to be withdrawn for reasons which would not be legally sufficient to justify the cancellation of a contract involving other rights or different relationships. It would be neither practicable nor desirable to attempt to formulate any all-inclusive statement which could govern the exercise of this discretion in all cases. Each case must depend and must be decided on its own facts. It is sufficient to say that neither the provisions of the Domestic Relations Law, nor the decided cases, require the conclusion that the mother has a right to revoke her consent, which may be arbitrarily exercised, or that judicial officers, charged with responsibility in adoption proceedings, may be required to permit a revocation if it is prompted by a purpose which is illegal or contrary to accepted concepts of sound morals. The question being one of judicial discretion should be decided on all the facts including, but not limited to, the circumstances under which the child was sur-

rendered and the consent was given, and the motive for the attempted repudiation.

A natural mother unable to support her child may contract to transfer her parental rights and duties to another, subject to the approval of the County Judge or Surrogate (Domestic Relations Law, art. VII) or to the right of a court of equity to interfere in the interests of the infant. (*Middleworth* v. *Ordway, supra.*) The situation is entirely different, however, if she attempts to sell her rights, or to dispose of her child to another for her own financial profit. In such a case, the question presented is one of public policy in the administration of the law. She may place her child with others for adoption, but she may neither demand nor accept any compensation therefor except for reasonable medical fees and hospital charges connected with her confinement. (Penal Law, § 487-a; Social Welfare Law, § 374.) We see no distinction in principle between a demand for money as the price of the surrender of a child for the purpose of custody, pending adoption, which is expressly prohibited by law, and a demand for money as the price of a consent to the adoption itself. The cited statutes sufficiently indicate, if any statutory declaration is necessary, the policy of the State, which is controlling here. A child is not a chattel to be bought or sold. (*People ex rel. Gill* v. *Lapidus,* 202 Misc. 1116; *People ex rel. Neidlinger* v. *Lohman,* note, 17 Abb. Prac. 395, 396.) Whatever may be the limits of the Surrogate's discretion, we entertain no doubt as to how it should be exercised, if it shall be found that the facts are as they are claimed to be by appellants. If the continuance of respondent's consent was conditioned on the payment of money and her attempted revocation was prompted by appellants' refusal to accede to her demand for payment, the exercise of a sound discretion will require the denial of her application. (Cf. *Riggs* v. *Palmer,* 115 N. Y. 506; *Veazey* v. *Allen,* 173 N. Y. 359; *People* v. *Schmidt,* 216 N. Y. 324; *Attridge* v. *Pembroke,* 235 App. Div. 101, 102, and *Flegenheimer* v. *Brogan,* 284 N. Y. 268, 272–273.)

We would, of course, hesitate to disturb the determination of disputed issues of fact by the Surrogate who saw and heard the witnesses (*Boyd* v. *Boyd,* 252 N. Y. 422, 429; *Amend* v. *Hurley,* 293 N. Y. 587, 594), if his findings had resulted from a consideration of all the available evidence. However, appellants have been prevented from proving the facts by the Surrogate's ruling with respect to the monitored telephone conversations. It may be that no proper foundation was laid for the introduction of the recording. No objection was made by respondent, how-

ever, and the Surrogate's ruling does not appear to be based on that ground. The recording was admissible in evidence. (Cf. *People* v. *Defore,* 242 N. Y. 13; *People* v. *Richter's Jewelers,* 291 N. Y. 161; *Bloodgood* v. *Lynch,* 293 N. Y. 308, 311; *People* v. *Vieni,* 301 N. Y. 535; *Matter of Davis,* 252 App. Div. 591; *People* v. *Appelbaum,* 277 App. Div. 43, 45, affd. 301 N. Y. 738, and *Schwartz* v. *Texas,* 344 U. S. 199.)

The order should be reversed on the law and the facts and the matter remitted for further proceedings not inconsistent herewith, with costs to appellants to abide the event.

We have not passed upon appellants' contention that respondent's asserted demand for money constituted an abandonment of the child, making her consent to the adoption unnecessary under section 111 of the Domestic Relations Law, since that question was not litigated below. (Cf. *Flagg* v. *Nichols,* 307 N. Y. 96, 99.) Since the matter is to be remitted, the question, if presented, should be determined by the Surrogate, on consideration of all the evidence which may be submitted bearing on that issue. (See *People ex rel. Hydock* v. *Greenberg,* 273 App. Div. 710; *Matter of Marino,* 168 Misc. 158.)

MacCRATE, SCHMIDT, MURPHY and UGHETTA, JJ., concur.

Order of the Surrogate's Court, Queens County, reversed on the law and the facts and the matter remitted for further proceedings not inconsistent herewith, with costs to appellants to abide the event. [See *post,* p. 968.]