Pierson R. Hildreth, S.
This is an adoption proceeding. The caption has been changed to protect the child. A hearing has been held upon issues which concern (1) the validity of a consent of the natural mother as contained in an agreement of adoption which she signed, (2) the validity of a withdrawal and revocation of such consent, and (3) whether the mother abandoned her child so that her consent would not be required. The issues arose when the mother appeared before the court for examina *855 tion and confirmation of her apparent consent as required by section 115 of the Domestic Relations Law. 'She then told the court that she did not consent to the adoption, desired return of her child, and had requested return of her child shortly after petitioners acquired custody and that petitioners had refused to return the child.
Petitioners now take the position that the mother withdrew her consent for improper motives, and that her consent is not required because of abandonment. The position of the mother is that her consent was obtained without knowledge of its effect and by misrepresentation, that it was validly revoked, and that there has been no abandonment.
The situation is unfortunate for all concerned. The court has given consideration to all factors and it is the decision of the court that the consent is not effective, that it was revoked, that the mother did not and has not abandoned her child, that the child is to be returned, and the petition for adoption be denied.
The child was born February 7,1969. The mother was unmarried and was then 13 years of age. She lived with her parents and still does. The mother knew of the pending birth before it happened, but she did not tell her parents and they were unaware of it until the day before. They then arranged to go to the home of the mother’s aunt in Suffolk County and the child was born at a local hospital.
The evidence indicates sufficiently to the court that neither the mother nor her parents gave any serious or deliberate consideration as to what might be the ultimate disposition of the child until after it was born. The mother states that she did not know just what to do, that she wanted to keep her child but did not want to hurt her parents. The grandmother states that they were both under stress. In any event the mother and her parents seem to have arrived at an initial decision to give custody of the child to the Department of ¡Social Services. The evidence indicates that both understood and believed that this would be a temporary arrangement pending a more deliberate decision, and that within a period which they understood to be at least three months the child would be returned to the mother if she so requested.
At some point during consideration of placement with the Department of Social Services petitioners heard of the child through a doctor. An intermediary, being the brother-in-law of the prospective foster father, was then requested by the petitioners to negotiate with the mother and her parents. He never talked with or saw the natural mother until the day the child was released to the prospective foster parents. He paid the hospital *856 and doctor’s bill with funds provided by the prospective foster parents, but most of his dealings throughout appear to have been with the mother’s father. It appears that the Department of iSocial Services had no objection to a private placement if that was what the mother wished to do.
The child was delivered through the intermediary to the prospective foster parents at the hospital. Shortly after this, papers were prepared by the attorney for the prospective foster parents. These were given to the intermediary who took them to secure the signature of the mother as well as the signatures of her parents in New York City.
Both the mother and the grandmother state that at no time did they understand that the agreement meant the giving .of a final consent to adoption. They state that the evidence sufficiently supports the view that they understood that the placement was a temporary arrangement as it would have been with the Department of Social Services, that nothing would be final or binding until the matter came before the Judge, that in the meantime the child could be returned, and that the prospective foster parents were to be like a guardian until or unless a decision for adoption was made.
This agreement is dated February 19, 1969 and acknowledged February 19, 1969. The proof indicates that, regardless of just when it was signed by the mother and her parents, the acknowledgement of their signatures was made after they signed, by a notary who did not see them and that they were not present before the notary, notwithstanding the recital to that effect in the acknowledgement. The petition and agreement were not filed until April 4, 1969. The mother also signed an affidavit dated March 6, 1969 which specifically states that signing in no way bound the foster parents to proceed with the adoption in the event they deemed it in the best interest to return the child.
The proof indicates that the mother told her parents in March that she wanted to keep her child. They did not know how to contact the prospective foster parents but her father did contact the intermediary in March and requested return of the child. The evidence as to certain aspects immediately following is in conflict. There is evidence that the foster parents directly or indirectly tried to induce the mother to change her mind as to return of the child. The evidence is in conflict as to the substance of conversations between the intermediary and the grandfather of the child. If there were any such conversations, howevex^it does not appear that the mother participated. Just when the intermediary relayed the request for return of the child to the prospective foster parents is not clear. But both admit *857 that in April they knew that the mother wanted her child back. They did not wish to return the child.
When the petition was filed petitioners ’ attorney was advised of the court requirement that the parent whose consent is required must appear before the ¡Surrogate for examination and confirmation of consent. Accordingly, she appeared before the Surrogate June 5,1969 accompanied by her parents. The mother had no attorney, and it appears that at no time until some date after their appearance before the Surrogate did either the natural mother or her parents have any independent legal advice, that petitioners’ attorneys prepared all documents and presented them to the mother by means of the intermediary who was not an attorney. The mother told the court that she did not consent to the adoption and wished return of her child. The court advised the mother and her parents to secure their own attorney, and indicated that if issues were not resolved between themselves a hearing would be required. Petitioners refused to return the child, the parties were unable to resolve the matter and a formal hearing followed.
The court is fully satisfied that there has been no abandonment by the natural mother. To find abandonment the evidence must show a settled purpose to be rid of all parental obligations and forego all parental rights. The burden to show abandonment is upon petitioners who allege it. (Matter of Maxwell, 4 N Y 2d 429; Matter of Bistany, 239 N. Y. 19.) The situation here is to the contrary. The mother requested return of her child, she was under the impression that the placement would provide a temporary arrangement and give her a chance to think the matter over. Her request for return of her child was a clear warning to petitioners that there was no intent to abandon. Petitioners are charged with the knowledge of their intermediary and knew of the request for return within a short period after they had custody. The delivery of a child to prospective foster parents for possible adoption iá not an abandonment. (Matter of Burke, 60 N. Y. S. 2d 421.)
This is not a custody proceeding in which parental ties would be preserved. It is an adoption proceeding which involves severance of all parental ties with its mother, the grandparents and other relatives. Such factors are to be considered. (Matter of Ekstrom, 24 A D 2d 276.) The grandmother, as mother of the natural mother, would be the natural guardian of the child if anything happened to the mother. (See Matter of Erhardt, 27 A D 2d 836; First Trust Co. v. Goodrich, 3 N Y 2d 410.) The court must give careful consideration to severance of all ties of a child to its natural mother unless there is abandonment or the *858 parent is manifestly unfit. The burden to show such is on the nonparents. (Matter of Willing, 43 N. Y. S. 2d 834; Matter of Anonymous, 32 Misc 2d 683.)
There is no issue here of the fitness of either the mother, grandparents or prospective foster parents. With consent of the parties the court requested and was provided with a report by the Probation Department. Suffice to state that the character and fitness of all are adequately substantiated. The court may consider such report. (See Kesseler v. Kesseler, 10 N Y 2d 445.)
Since there is no abandonment, the consent of the child’s parent is necessary for the adoption. (Matter of Livingston, 151 App. Div. 1; Matter of Bistany, supra; Matter of Willing, 43 N. Y. S. 2d 834 supra.)
Next to consider is the issue of consent and its withdrawal. The consent of a parent to adoption must be an existing valid consent at the time of the adoption. (People ex rel. Anonymous v. Anonymous, 195 Misc. 1054; Matter of Maxwell, supra.) Here entirely aside from any question concerning initial validity of the consent, it was withdrawn and revoked before the adoption proceeding reached the stage for final order. The statutory period of six months under section 116 of the Domestic Relations Law had not expired. The consent had been withdrawn even before the petition was filed.
The purpose of the statutory period of six months is to give both the natural parent or parents and the foster parents sufficient time to reflect and consider their action. (Matter of Van Allen, 9 Misc 2d 381.) The purpose is “to prevent unduly precipitate action in the serious matter of establishing new relationships and severing those of blood and natural affection” (Matter of Cohen, 155 Misc. 202). It is for the benefit of both parties. (Matter of Bruce, 269 App. Div. 718, affd. 295 N. Y. 702.)
Furthermore the court is of the opinion that the circumstances surrounding the securing of the mother’s initial consent are such that the consent should not be given effect. Although the statute authorizes an infant parent to give consent to an adoption of her child, yet other factors can vitiate the consent. The proof here is clear that when consent was obtained the mother had no attorney or independent legal advice, ^petitioners’ attorney securéd the consent through an intermediary, no adequate explanation of the meaning or effect was given, the mother and her parents were under the impression that placement was a temporary arrangement, and that the child would be returned if requested. The mother was immature and under stress and *859 uncertainty as to the real wishes of her own parents. It seems to the court that public policy requires that petitioner have the burden of affirmatively showing that a consent of an infant parent was obtained voluntarily with full knowledge -of its effect and understanding of the consequences, and with adequate independent advice from sources other than petitioner’s own attorney or agent. (See Matter of Creekmore, 1 N. Y. 2d 284.) Petitioners have not met that burden.
Assuming initial validity however, the mother revoked the consent before any order of adoption was made and there is now no valid subsisting consent. ¡Since there is no valid consent of the parent to the proposed adoption, and there has been no abandonment, the request for adoption cannot be granted.
The petition for adoption is denied. Submit order directing that the consent be deemed revoked, and that custody of the child be returned to the natural mother. ‘The order shall direct that the foster parents return the child to its natural mother at a time and place agreed upon by all parties or in default of such agreement the return shall be as court may direct at the foot of such order.