OPINION OF THE COURT
Francis A. Affronti, J.
On September 28, 1984, petitioner natural mother of twin infants born on June 23, 1984, allegedly signed an irrevocable consent not executed before a judge, reputedly consenting to the private placement adoption of her sons, to the respondent adoptive mother. Thereafter, and on October 19, 1984, before a notary public, petitioner signed an affidavit revoking such prior consent.
The children have resided with the adoptive mother since shortly before the consent date and they continue to live with her to the present time. Meanwhile, petitioner has been awarded full and liberal visitation as provided for in a temporary order of this court signed on December 20, 1984. An adoption proceeding is now pending before the court which, of course, cannot be finalized until it is determined if the revocation should be given full force and effect.
Domestic Relations Law § 115-b, specifically prescribes the legal parameters to be followed regarding consent revocations in private-placement adoptions. A lengthy hearing was thereupon conducted to establish the effectiveness of the revocation. In rendering this decision reliance is had upon the documentary exhibits offered, applicable statutory and existing case law, as well as the legal pleadings and memoranda of counsel.
*198 Preliminarily, it must be stated that on October 22,1984, this court was advised by respondent’s attorney that petitioner was contemplating an imminent return to her homeland in Puerto Rico with her children. Because of the pendency of the adoption proceeding, and most significantly, so as to continue to preserve the current residential status of the children and not impair their best interests, nor prejudice the rights of either party, an ex parte order was granted to respondent, allowing her temporary custody of the infants, restraining petitioner from temporarily removing them from this jurisdiction, and directing their immediate return to the adoptive mother from whom they were briefly removed.
It is unnecessary to recount the testimony or elaborate upon the evidence presented during the hearing which encompassed the acts, words, and conduct of the parties leading to the initial consent and its revocation. Likewise, counsels’ various contentions and legal arguments, including, but not limited to the voluntariness of any consent, whether petitioner was at all times represented by counsel, whether she knowingly and intelligently understood the import of her actions and the wording incorporated in the document(s) because she is of Spanish heritage and displays a limited ability to speak or understand English, need not be reviewed for purposes of this decision.
Rather, the single-most determinative and pervasive issue is whether an irrevocable consent ever occurred in the first instance which could offer or form the basis for the revocation. In relevant part, Domestic Relations Law § 115-b requires the existence of a duly executed and acknowledged consent. Such requirement, this court believes, to be a condition precedent to any action maintained by the consenting parent to obtain the statutory relief she now seeks in the return of her children.
For the reasons following, it is the finding and conclusion that the purported irrevocable consent was not duly executed and acknowledged in full and complete compliance with the edicts of Domestic Relations Law § 115-b, and is, therefore, invalid, null and void.
As to the “consent” in question, petitioner’s signature does not appear directly beneath the obligatory language informing her of the potential consequences of the giving of her consent and its binding effectiveness. On the contrary, her signature is located directly at the bottom of the document and below the following paragraph: “I also hereby acknowledge receipt of a conformed copy of this irrevocable consent which was personally delivered to me by Miguel A. Reyes, Esq., this 28th day of September, 1984.”
*199 For reference, Mr. Reyes is an attorney who testified that he provided legal advice to petitioner and prepared the “consent” along with other appropriate papers necessary to conclude the adoption.
The petitioner’s signature, therefore, merely acknowledged receipt of a copy of the document, but nowhere does she designate or depict in written form her understanding of its legal impact. Importantly, only a typewritten standard form acknowledgment appears below the statutory language (Domestic Relations Law § 115-b), followed immediately by the signature and notarial stamp of Mr. Reyes who notarized petitioner’s “invisible” signature. In summary, the consent merely contains a signed attorney acknowledgment followed by petitioner’s written receipt of a conformed copy.
A preprinted “Agreement of Adoption and Consent” was also signed by petitioner which did not, in any respect, contain requisite language, and although signed and notarized, fails to cure or rehabilitate the contested and faulty document. The prevailing statute (Domestic Relations Law § 115-b) aside, the law is replete with terminology reinforcing the need for strict adherence to the form and content demands of adoption pleadings as they apply to their verification, execution and acknowledgment. (See, Domestic Relations Law § 112 [5]; § 115 [4], [8].)
The consent herein, which is required by law to be acknowledged, is completely devoid of petitioner’s signature, and thus, does not approach, much less achieve, the status of an instrument upon which a valid, authentic, and binding attestation can follow. (See, General Construction Law §§ 10,11,46; UCC 1-201 [39].) “Executed” means “completed,” or “carried into full effect” and an agreement is “executed” by being signed (see, Black’s Law Dictionary 676 [4th ed]; Matter of East 56th Plaza v New York City Conciliation & Appeals Bd., 80 AD2d 389).
Current statute and case law has disclosed a complete lack of precedential guidance in addressing the issue at bar, that is, the effect which the failure of a consenting parent to affix a signature to an irrevocable consent may have upon its validity and enforcement. Although courts have recently pondered and resolved disputes involving “judicial” and “nonjudicial” consents, they have not previously encountered a natural mother’s purely ministerial act of failing, by inadvertence or otherwise, to place her mark or signature on such a weighty and significant document, which legally and forever severs her parental ties to her children. Furthermore, our courts have ruled upon the sufficiency of adoption consents and their statutory compliance, in *200 addition to the consequences for noncompliance, the necessity of informing a natural parent of the repercussions of a timely application to revoke, and have emphatically delineated the various courses of action to be pursued by natural and adoptive parents upon a filing of a timely revocation. (Domestic Relations Law § 115-b; see, Dennis T. v Joseph C., 82 AD2d 125; Matter of Daniel C., 99 AD2d 35, affd 63 NY2d 927; Anonymous v Anonymous, 108 Misc 2d 1098.)
In Anonymous v Anonymous (supra, p 1102), the court, in concluding that the mother’s “so-called consent’ was void ab initia, asserted that adoption “is a status created by the State” and being “entirely statutory” adoption statutes are to be “strictly construed” (emphasis added).
In Matter of Anonymous (60 Misc 2d 854), an adoption was denied and commentary had upon an acknowledgment of signaturés occurring after the signing, by a notary who failed to observe the parties at the time of signing and who were not present before him when acknowledged. A “consent” has likewise been invalidated upon the ground of misrepresentation where it was postdated and notarized after the child’s birth, although originally signed prior thereto (see, Matter of Emanuel T., 81 Misc 2d 535).
The facts presented herein lead to the blatant and obvious conclusion that the consent was not legally existent, valid, and binding nor was it duly executed and acknowledged. To hold otherwise would wreak havoc and tear apart the very essence and fiber of our statutory tenets which limit an individual’s basic right of parenthood, and which must be granted strict construction. There being no “consent” to properly revoke, adherence to the strict common-law presumption which obtains to custody must be observed. (Citing Anonymous v Anonymous, supra.)
In the case at bar, the “consent” never reached fruition, and noncompliance with controlling law (Domestic Relations Law § 115-b) is readily apparent. The factual presentation leads this court to differentiate between a consent “nullification” rather than a “revocation”, the inherent distinctions of which do not share, much less demand, equal attention.
The circumstances confronted herein substantiate that a valid and binding consent was never born and the “so-called consent” presented did not comply with Domestic Relations Law § 115-b, so as to remove the presumption in petitioner’s favor of a superior right to the custody of her children (see, Anonymous v Anonymous, supra, at p 1106).
*201 Upon the foregoing, it is therefore,
Ordered that the pending adoption proceeding, entitled A-276/277-84, is hereby dismissed, and it is further
Ordered that the infant children be forthwith returned to their mother, the petitioner, Maria E. Contreras, said return to be immediately arranged by and between the respective attorneys for the parties hereto, and it is further
Ordered that in the event the children are not returned pursuant to this order, a proceeding to obtain custody may be instituted by petitioner in the Supreme Court or the Family Court.