THE PEOPLE OF THE STATE OF NEW YORK ex rel. GRACE E. WOOLSTON, Relator, *v.* MIRANDA WOOLSTON, Respondent.

Supreme Court, Genesee County, December 12, 1929.

*Crittenden & Crittenden,* for the relator.

*William H. Coon,* for the respondent.

EDWARD R. O'MALLEY, J.   This is a habeas corpus proceeding. The relator is the mother of Wesley Woolston, age nine, and June Laura Woolston, age ten.   For the last five or six years these children have lived with their father, Elmer W. Woolston, at Pavilion, Genesee county, and were supported by him.   During said period and prior thereto when the parents resided in Ontario county, his sister, Miranda Woolston, the respondent, kept house for the father, who died suddenly on October 26, 1929.   The relator has lived at Iola Sanitarium, Rochester, for the past four years suffering from tuberculosis.   Following the father's death the relator demanded the custody of her children which was refused and she brings this proceeding to secure their custody.

It is conceded that the mother is unable to give personal care to her children owing to her physical condition and that she has no means from which she can contribute to their support.   She here seeks their custody that she may place them with her sister, Edna Franz, at her home in Buffalo.   Both Mrs. Franz and her husband testified they were willing and anxious to take the custody of the children, educate and support them out of their own means. Anthony L. Franz, the husband, testified he has real property of the value of $12,000, against which there are no incumbrances, and that his wife owns property of the value of $4,500 to $6,000; that they have two children, one aged twelve, and the other sixteen.

No question is raised by the respondent as to the willingness, the moral fitness or financial responsibility of the maternal aunt and her husband to support, educate and care for the children.

Nor is any question raised as to the reputation of the respondent

Miranda Woolston, the paternal aunt. She is a maiden lady, forty-three years of age, and is the owner of a house and two acres of land in Pavilion against which there is a mortgage of $650. She has no other property or income except that she raises a little poultry and hopes to secure some small children to support and possibly some aged people to care for and in that way she expects to be able to support the children.

The respondent opposes this application upon the grounds: (1) That for the past five or six years as her brother's housekeeper she has given these children the care of a mother and loves them and that it is the wish of the children that they be permitted to remain with her; (2) that the children have received religious instruction in the Protestant faith and that Mrs. Franz, the maternal aunt, in whose custody the relator plans to place them, is a Roman Catholic and that if the custody of the children is given to the mother they will likely be brought up and instructed in the Roman Catholic faith; (3) that the relator is not of good moral character; and (4) that she has no financial means of support for herself or children and owing to her physical condition will be unable to have personal charge of her children.

As to the first objection, I do not believe it to be valid, reasonable or sufficient. The fact that the respondent, a paternal aunt, who never had the legal custody of the children, has learned to love them by taking care of them for her brother for a period of five or six years, cannot control against the wishes of the mother seeking the custody of her children.

Upon the hearing the court permitted the children to testify. They expressed the desire to remain with the respondent and a disinclination to be placed with the maternal aunt or the mother. However, I was then and am now of opinion that these children, owing to their tender ages, are incapable of appreciating and knowing what is best for their welfare and interests under the circumstances, which of course is the paramount question presented for consideration. Where a child is incapable of exercising an intelligent choice because of tender age, the courts have uniformly given only slight consideration to its wishes.

As to the question of religious consideration: It is true the courts will, in determining what is for the best interests of the child, take into consideration among other things the religious bringing up and teaching of such child, and when practicable and feasible will leave or place the child with persons of the same religious faith. But it is also true that such considerations are not controlling especially where it is clear that temporal advantages will result, as in the instant case, by placing the child with others. The

consideration of temporal advantages in such cases controls over the religious.

As to the moral character of the relator: It was proven that the relator after being separated from her husband had lived for a period of time with one Hopwood as his wife in the city of Rochester and that prior to such period or during the same, a child was born to her and that by the records of its birth in the city of Rochester the name of Hopgood was given as the father. This child now lives with Mrs. Franz, the maternal aunt, in the city of Buffalo who took him at the request of this relator with full knowledge of the claim of its alleged illegitimacy. Her relations with Hopgood as here recited are the only proof of immoral conduct on relator's part. The relator's conduct is an offense in the eyes of the law and also by the standards set by Christian and civilized society. Her conduct would have entitled her husband to a divorce. However, I do not think such conduct is a sufficient ground to deny her the custody of her children concededly born in lawful wedlock. It should be borne in mind that she arranged for the support and education of this child with her sister, showing that she had the maternal instinct and love for this child, notwithstanding its suspected or actual illegitimacy.

As to the relator's financial means: It is conceded that she has none and will not be able to have personal charge of her children because of her physical condition, but she has arranged for their financial support and she asks for their custody so she may place them with her sister which will mean that the children will be in the custody of herself and the members of her own family where she may see them more frequently and satisfy her motherly love and longing for them.

The power of the Supreme Court as to the restoration of children to the care of their parents is limited only by the necessity of the case, having due regard for the welfare of the children. (*People ex rel. DeLaney* v. *Mt. St. Joseph's Academy*, 198 App. Div. 75.)

Section 81 of the Domestic Relations Law (as amd. by Laws of 1925, chap. 67) provides that a married woman is a joint guardian of her children with her husband with " equal powers, rights and duties in regard to them." The husband being dead, the relator is the sole guardian of her children and everything else being equal has the right to say how they should be educated and in whose custody they shall be. In the *DeLaney Case* (*supra*) the court said: " We cannot give direction as to how these children should be educated. We can only say that the academy has no legal right to their custody in the absence of the wife's consent." (Pp. 82, 83.) In the same case the court used the following language, applicable

to the instant inquiry: " In cases such as are now before the court it has been so often said that the rule to be followed is consideration of the welfare of the children that it is not necessary to cite authority. In applying this rule the courts will always have in mind, also, that they should not violate one of the most tender and sacred of human sentiments and emotions — the love of a mother for her children."

For the reasons stated and upon all the evidence, I, therefore, am of the opinion that the writ should be sustained.

An order may be prepared awarding the custody of Wesley Woolston and June Laura Woolston to their mother, Grace E. Woolston, without prejudice, however, to the respondent for future application for a modification of this order in the event that it should be made to appear that the best interests of the children would thereby be served.