THE PEOPLE OF THE STATE OF NEW YORK ex rel. MARY M. GILL, Relator, against MAX LAPIDUS et al., Defendants.

Supreme Court, Special Term, Kings County, January 14, 1953.

*George F. L. Hentz* for relator.

*Robert E. Dempsey* for defendants.

ARKWRIGHT, J. An unwed mother by this application seeks the custody of her four-and-a-half-month-old child which she voluntarily relinquished to the respondents at its birth.

A strange and bizarre story is here unfolded. Elements of criminality may not be lacking.

The petitioner, some twenty-eight years of age, left her home in Brooklyn and went to a summer resort hotel at Harris, New York, in the early part of July, 1952. There she secured employment as a chambermaid.

At the time, she was about eight months pregnant. Her physical condition was known at the hotel, but only a few knew she was unmarried. She was told by someone that she could secure $1,000 for the baby. Shortly thereafter, she was approached by Mrs. Lapidus, one of the respondents, who offered to take the child when born. Mrs. Lapidus had just arrived at the hotel, with her husband, Max Lapidus, in company with her sister and the latter's husband, for a short stay. Mr. Lapidus met the petitioner following the above conversation.

It was agreed that the respondents should pay the doctor's and hospital bills of the petitioner, and that they should have the child.

A doctor in the vicinity was engaged to take care of the petitioner.

The petitioner became known as Mrs. Lapidus, but only at the physician's office and at the hospital where she was delivered. The respondents evidently originated this idea and participated in carrying it out. The sister-in-law, if not the brother-in-law too, had knowledge of it.

The doctor rendered the agreed medical services.

A baby girl, the subject of this proceeding, was born on July 21, 1952, at the hospital. The doctor signed the birth certificate, which together with the other exhibits has been impounded by the court. Max Lapidus, one of the respondents, is set forth in the certificate as the father of the child, although he never met the petitioner until his arrival at the hotel. Beverly Jacobs is given as the maiden name of the mother. Eight hundred fifteen East 52nd Street, Brooklyn, New York, the residence of the respondents, is set forth as the residence of the mother. The child's name appears therein as Amy Fern Lapidus, the present name of the infant.

The hospital charges were paid by the respondents. These were billed to '' Mrs. Beverly Lapidus.''

On July 24, 1952, the petitioner signed a document in which she purported to " give " her infant daughter to the respondents as of July 26, 1952, to have and to hold forever.

The child was turned over to the Lapiduses. The parties separated — the Lapiduses to their home, with the child, the petitioner to her relatives in Brooklyn.

The mother has had a change of heart. She now earnestly, sincerely and heartbrokenly seeks to recover her child.

The Lapiduses have taken the infant and, as if it were one of their own, have lavished every attention, comfort and affection upon it. They have a twelve-year-old son. The two children have rounded out for the Lapiduses a happy household. As the child has been taken care of physically, so likewise has it been taken care of according to religious rites.

The respondents assert that the infant was surrendered to them by an unwanting mother and that she abandoned the child. They also assert that by a written instrument of consent she gave the child to them.

The petitioner's position is that her acts did not constitute an abandonment of the infant; that in July and August, she attempted to communicate with the respondents about fifteen times, but was unable to do so; that she then consulted a charitable organization for assistance; that she demanded the return of the infant but was refused it; and that she then commenced this proceeding.

Under these circumstances of difficulty and tragedy, the court is called upon for a determination of the rights of the parties and the welfare of the child.

Neither in the papers nor in the proof, is there indication as to who is the father of the child, nor anything whatever mentioned in regard to him.

There is nothing, aside from the mother being unwed, to indicate that the mother is of such character, temperament or habits that it would be detrimental to the child's interest that it be returned to her custody and control.

A child is not a chattel to be bought or sold, directly or indirectly, and it may not be delivered as if it were either an inanimate or an animate gift. A document signed and delivered to effectuate any such intention of bounty is ineffectual to do so. (*Matter of Anonymous,* 178 Misc. 142, and cases cited therein; *People ex rel. Anonymous* v. *Perkins Adoption Soc.,* 271 App. Div. 672, 673, affd. 297 N. Y. 559; *Matter of Donnelly,* 70 Misc. 584.)

No adoption proceedings have been instituted.

As between the parties, the right of the mother, the natural parent, to the child is superior. (*Matter of Donnelly, supra; Matter of Livingston,* 151 App. Div. 1, 7; *Matter of Bistany,* 239 N. Y. 19, 24; *People ex rel. Portnoy* v. *Strasser,* 303 N. Y. 539.)

The petitioner's offense against society and religion in having been the mother of an illegitimate child, is not sufficient ground to deny her custody of her offspring. (*Robalina* v. *Armstrong,* 15 Barb. 247; *People ex rel. Woolston* v. *Woolston,* 135 Misc. 320, 323), and, in this case, as between the contestants for custody, the moral turpitude involved on the part of the petitioner is offset at least to a considerable degree, by the respondents' acts in regard to the doctor, the payment of bills to secure the child, and the falsity of the birth certificate.

The mother is a domestic. She has made arrangements to place the child, for the present, under the care of a reliable practical nurse, who lives in a one-family house, on Long Island. The child will have its own well-furnished room. The nurse, her character, the time, attention and care to be given the child, and the reasonableness and adequacy of the financial charges therefor, have been approved by a social worker of a recognized and respected charitable organization. Out of her hard-earned income, the mother will make the necessary contributions for the child's care and support.

The welfare of the child is paramount. In the consideration of such welfare, an immediate better pecuniary advantage, or a more luxurious place of abode, is not a decisive or imperative factor (*People ex rel. Beaudoin* v. *Beaudoin,* 126 App. Div. 505, 508). The child's interest will best be served by entrusting it to the mother. Humanity dictates that the decision be made in favor of the mother.

The writ is sustained, and the respondents are directed to surrender the infant to the petitioner within five days of the making and entry of an order herein, and the service thereof upon the respondents, or either of them.