Luigi R. Maraño, J.
This is an application brought by respondent, father, for custody of the infant child, Eric, born February 10, 1964, pursuant to section 511 of the Family Court Act. Respondent has acknowledged paternity of the child.
Since this proceeding appears to be a case of first impression under section 511 of the Family Court Act, we must therefore be guided by principle as well as by prior authority.
Prior to 1960, section 60 of the New York City Criminal Courts Act, gave the Court of Special Sessions “ exclusive jurisdiction in proceedings to establish paternity and to provide for the support ”. It also gave the court jurisdiction in paternity proceed *758 ings to determine the question of custody relative to their immediate care.
In formulating the Family Court Act the New York State Joint Legislative Committee on Court Reorganization made the following pertinent comments regarding section 511: “ This jurisdictional grant is designed to permit the Family Court to draw upon all its resources in protecting and caring for the innocent child of an illicit relation. The new section also permits the filing of a neglect petition at any time in the proceedings. This combination of powers should result in practical improvements and not simply in a change of nomenclature.” (Emphasis supplied.)
The conclusion would seem to flow inevitably that the Family Court has the power under section 511 of the Family Court Act to determine custody of an illegitimate child. The inclusion of the words ‘ ‘ determine custody ’ ’ in this section evidences a clear intent by the Legislature to confer such power on the Family Court.
Respondent is a married man with two legitimate children. It appears that in April, 1961, he met petitioner and thereafter they entered into a meretricious relationship as a result of which petitioner was impregnated and gave birth to the infant child, Eric, the subject of this custody proceeding, on February 10,1964. The illicit relationship continued until late in 1967.
Petitioner testified that prior to the birth of the infant, respondent had promised he would divorce his wife and marry petitioner, which promise if it were made, has certainly not been kept.
The child has resided with petitioner (mother) from the date of birth, except for the period of visitation with respondent.
Respondent vigorously urges that the best interest of the child would be served by granting custody to him since he is a man of some means which will enable him lo furnish the child with economic advantages, as well as creating an environment of a good stable family relationship.
Apparently respondent’s wife who is now aware of the existence of the illegitimate child, is willing to accept Eric as a member of her household.
Respondent further urges that petitioner is mentally unstable and not fit to bring up the child properly and cites, in support of ■his position, the fact that petitioner some five or six years ago attempted suicide by slashing her wrists requiring hospitalization for 10 days, during which time she was seen by a psychiatrist, and finally, respondent urges that her present conduct proves her to be unfit to rear the child.
*759 The evidence discloses that respondent has supported the child from birth until the early part of 1968. At that time, because of the alleged misbehavior of petitioner regarding visitation, respondent, on the advice of his counsel, ceased making the payments. As a result of the nonpayments, the paternity petition was instituted.
Respondent has testified as to his comfortable financial ability and his overwhelming desire for the child’s custody. He admits the meretricious relationship, and on cross-examination further admitted that prior to the suicide attempt he had promised to marry petitioner. This court does not question the sincerity of the respondent’s protestation of love and affection for the child.
Respondent further testified that petitioner had threatened to either kill herself or the child if the respondent .took the child from her. Following these threats in 1967, respondent lodged a complaint with the Society for the Prevention of Cruelty to Children, alleging that petitioner was neglecting the child. The complaint was investigated and completed. A witness from the Society for the Prevention of Cruelty to Children testified that the investigation did not disclose any neglect on the part of the mother. Surprisingly enough, respondent never called to ascertain the findings of the investigation.
It should be noted that respondent himself was hospitalized for a short period of time after an alleged fall in 1962. Apparently upon regaining consciousness, he found himself in a locked ward of a mental institution where he was confined for three days.
Petitioner testified in her own behalf. This court has concluded that her testimony was logical, coherent and believable. She answered to the satisfaction of the court the various charges brought against her by respondent.
Both parties were examined by three psychiatrists. The first recommended that the child should be awarded to respondent. The second psychiatrist, who was a private psychiatrist, arrived at a diametrically opposite conclusion. The court thereupon appointed a third psychiatrist with instructions to examine all of the parties. The report of this third psychiatrist has been rendered and he has testified and been cross-examined. It is the definite and unequivocal conclusion that the welfare of the child would best be served by permitting the child to remain with the mother. The court has given serious consideration to all three reports.
Respondent’s counsel, at the conclusion of the testimony, argued that the best interest rule should control the custody of *760 an illegitimate child and that in this case, assuming arguendo that the mother fulfilled the minimum requirements, that because of the father’s economic position and means, buttressed by his evident love for the child, the court should award custody to respondent.
It would seem to be a work of supererogation for this court to again state that in custody proceedings it is the basic and inherent duty of the court to act as parens patries (Finlay v. Finlay, 240 N. Y. 429, 433-434).
It is a well-established rule of our courts that the mother of an illegitimate child is prima facie entitled to custody, provided, of course, that she is a suitable and proper person. (People ex rel. Meridith v. Meridith, 272 App. Div. 79, 81-82, affd. 297, N. Y. 692.)
Section 81 of the Domestic Relations Law gives the mother the right of guardianship over her children and while the statute uses the word “ children ” without modifying adjectives, it has been held to apply without regard to the question of legitimacy.
There is hardly a better recognized principle in all the jurisdictions of the United States dealing with the matter of custody of children than the rule that the welfare of the child is the primary consideration in a determination of the question of custody and that the mother of an illegitimate child has a natural, primary and prima facie right to the custody of her child as against the putative father (Matter of Grillo v. Sherman-Stalter Co., 195 App. Div. 362, 365, affd. 231 N. Y. 621).
The father’s right to the custody of a child is secondary to that of the mother. (Matter of Fierro, 5 Misc 2d 202.)
The day when the guiding factor was the economic position of the father of an illegitimate child has long since passed. It is ■now universally recognized that children brought up in homes of people of moderate means will just as likely grow up properly and become a credit to both parents and good citizens as those brought up in luxurious surroundings.
In almost every jurisdiction in the United States, and certainly in New York State, in which the issue has been raised, the principle has been enunciated that if the mother is suitable, her right to custody will not be denied merely because the putative father is able to provide better material advantages for the child. If the mother is able to supply the basic necessities of life, she is prima facie entitled to custody, and the contest will not be resolved by a comparison between the wealth of the parties. (People ex rel. Gill v. Lapidus, 202 Misc. 1116.)
*761 Respondent relies most strongly on the decision of Judge Habold Tessler (Anonymous v. Anonymous, N. Y. L. J., Oct. 21, 1968, p. 18, col. 7), wherein the learned Judge awarded custody of the illegitimate child of an interracial conjugation with the respondent father, relieving the mother of the custody. Judge Tessleb, in his opinion, reiterated the cardinal rule that the paramount consideration is the welfare of the infant. No new principle of law was enunciated by this opinion a careful reading of the decision will disclose. Judge Tessleb after a careful review of the evidence which disclosed questions of immorality, pornography, drug addiction and improper mode of living on the part of the mother, decided that from the testimony the conclusion was inevitable that the welfare of the child would best be served by awarding custody to the putative father because (a) of the morality and character of the mother (evidence of narcotic addiction, immorality and pornography), and (b) the mother’s dual living arrangement that the child was mainly in the care of its great-grandmother and very little in the care of its mother, and finally, the total environment of the child was debasing.
In the instant case, respondent, contrary to the evidence in the case decided by Judge Tessleb, has wholly failed to prove that the petitioner mother is incapable of properly caring for the child or has been neglectful. It is admitted that respondent can provide more material benefits to the child but as this court has stated, that is not a determinative factor. This court is convinced that the respondent loves the child and is further convinced that respondent’s wife is willing to care for the child. Notwithstanding, however, this court concludes that the welfare of the child would best be served by granting custody to petitioner mother and denying custody to respondent father.
However, the court is of the opinion that the father is entitled to liberal visitation rights, and, during the trial, the mother offered no serious objection to such arrangement. The court, therefore, rules that the father is entitled to visitation as previously ordered.
Respondent has expressed a desire to have some say in the future education of the child and the court finds this extremely commendable. The parties, therefore, are urged in the best interest of the child, to discuss plans and make proper arrangements. In the event, if a private school is decided upon, it should be near that of the mother, unless the mother agrees otherwise.