■ RICHARD D., Respondent, v WENDY P., Appellant.—In a custody proceeding, the mother appeals from an order of the Family Court, Dutchess County, dated April 10, 1978, which, after a hearing, awarded custody of the parties' child to the petitioner father. Order affirmed, without costs or disbursements, on the opinion of Family Court Judge Heilman. Hopkins, J. P., Damiani and Titone, JJ., concur; Suozzi, J., dissents and votes to reverse the order and remand the proceeding to the Family Court for a further in-depth hearing as to the best interests of the child, with the following memorandum: In this custody proceeding between the natural parents of a three-year-old child born out of wedlock, the Family Court applied the best interests of the child test and awarded custody to the natural father. Stripped to its barest essentials, the Family Court held, based primarily on the testimony of interested lay witnesses, that the natural father's present personality and life style was a lesser evil as compared to that of the natural mother and that the best interests of the child required an award of permanent custody to the former. In my view, an award of permanent custody to a father based on the best interests of the child cannot rest solely on factual testimony regarding the mother's present character and life style. Rather, before such an award of permanent custody is made, there should be adduced in-depth expert opinion as to the best interests of the child. Unfortunately, the latter was totally absent in the proceeding at bar. A brief review of the factual background of this case is essential. The infant was born out of wedlock to the parties on January 23, 1975. At that time the father, petitioner herein, was almost 17 years old and the mother had just turned 16. For a substantial period of time, both prior to and after the child's birth, they lived together at the home of the father's grandmother. In August, 1976 the parties stopped living together and they moved to separate quarters. Although the testimony is conflicting about the child's living arrangements thereafter, it appears from the record that the child spent time both with his mother and with his father. In about November, 1976 the mother began cohabiting with another man with whom she currently resides in a five-room apartment. She is receiving welfare and has never had a job. She had a history of foster care placement as a child. Her current paramour has an arrest record. On January 8, 1978, she gave birth to another child, this time fathered by her present paramour. The natural father married his present wife on October 10, 1976. The record indicates that the father and his wife reside in a three-room apartment. On July 12, 1977 a baby was born to the father and his wife. The evidence

further indicates that the father has no substantial assets and had only been in his present job for three weeks prior to the trial. In his three previous places of employment, he had been fired after short periods of time. The Family Court found, on the basis of testimony from petitioner's cousin and present wife, that "There appears to be a factual basis for charges that the father has a violent temper and is assaultive." Finally, petitioner's cousin testified that petitioner had attempted to bribe him to give favorable testimony. In awarding custody to the natural father, the Family Court held: "Neither home is ideal in this respect. Instability has characterized the early separate lives of both parties, more so in the case of the mother. Their life together, and then subsequently separate, continues to show evidence of instability. The father does not hold a steady job and apparently has conflicts, but at least he does work. He has married and he has provided an adequate home for his family. He has an apparently sincere interest in his son and a desire to care and provide for him. The mother's later years have been less stable. Her out-of-wedlock relationship with the father of her second child is not conducive to a good environment for the child in question. Largely through her own inadequacies or desire, the child has not had the security of home, supervision and affection. * * * The court determines that the child needs a strong and consistent family environment. This can best be provided under the current living conditions and situation of the father, as opposed to those of the mother." In approaching the issue raised in this case, I start with the proposition that the evidence introduced by petitioner, even if believed by the Family Court, would not have supported a finding that the natural mother was an unfit parent. Petitioner's sister testified that the mother and her paramour hosted marihuana parties in their apartment. This testimony was vigorously denied by the mother and was unsupported by any testimony from independent witnesses. Moreover, even if this testimony had been credited, it would not, by itself, without any proof of an adverse affect on the child, support a finding of unfitness on the part of the mother (see *Matter of Feldman v Feldman,* 45 AD2d 320). I recognize that the principle which holds that the mother of a child born out of wedlock is prima facie entitled to custody even as against the natural father unless found to be unfit (see *People ex rel. Meredith v Meredith,* 272 App Div 79, affd 297 NY 692; *Matter of Norcia v Richard,* 32 AD2d 656, affd *sub nom. Matter of Anonymous v Anonymous,* 26 NY2d 740), gives way, whenever the question of custody is before the court, to the principle of best interests of the child. As this court stated in *Matter of Barry W. v Barbara K.* (55 AD2d 607): "The rule which makes the welfare of the child of paramount importance and the paramount consideration in determining who is entitled to its custody applies to illegitimate, as well as to legitimate children". Any presumption in favor of custody in one parent is essentially limited to a situation where (1) custody has been awarded to one parent and the other parent seeks a change thereof *(Matter of Feldman v Feldman, supra)* or (2) absent extraordinary circumstances, the contest is between a parent and nonparent *(Matter of Bennett v Jeffreys,* 40 NY2d 543). Nevertheless, from a practical standpoint, there is no question that under normal circumstances a mother is the preferable custodian for a child, especially one of tender years *(Matter of Loretta Z. v Clinton A.,* 36 AD2d 995, 996). In the case at bar, in addition to the fact that the mother's apartment is roomier than that of petitioner, there was favorable testimony adduced on her behalf by an investigator with the Child Protective Unit of the Dutchess County Department of Social Services. He visited the mother's home on five separate occasions in the course of an investigation of a complaint by

petitioner that the mother's paramour had beaten the child. The investigator concluded, based on substantial evidence, that the child injured himself by running into a drum. When asked about his observations as to the relationship between the mother and her child, the investigator indicated that "It is a good relationship between the mother and the child." In elaborating upon that finding, the investigator, whom the Family Court described as a trained observer, stated: "The child responded well to the mother. They did things together. While I was talking with the mother, the child would climb up on the mother's lap and play. The mother was able to continue talking with me and still give attention to the child. I noticed a rapport, love and affection passed between them. When the mother was allowed to talk unincumbered [sic] and the child was off playing, he would run in the rooms and he would bring a toy out. He interacted with me when I was there. He was not shy. He appeared to be a very happy youngster. Very much in control. Completely a normal, totally normal child by his actions and behavior during my visits." The investigator also testified that the mother's apartment was clean and well kept and he did not comment adversely on her paramour or the latter's relationship with the child. In holding for the natural father, the Family Court emphasized that he is currently employed and married to a young woman who cares for the child and that despite his serious personality flaws, his current life style was superior in a relative sense to that maintained by the mother. Clearly, within the parameter set by the Family Court, i.e., a factual analysis of the present conditions in which the father and the mother find themselves, one cannot seriously argue with the decision of the Family Court. I would have no difficulty with that decision if temporary custody was intended and there would be an opportunity for re-evaluation in the not too distant future. However, the decision is obviously intended as a permanent and irrevocable one subject only to reconsideration and change upon a subsequent showing of unfitness of the petitioner or his abandonment of this child. In my view, such a conclusive decision at this early point in this child's life should not be made solely on the basis of the conditions which the parties are presently in, without some expert testimony to sustain the conclusion that the best interests of this child are served by such an award. The conditions in which the respective parents find themselves obviously are subject to change. If the mother's conditions change substantially for the better in the near future, there cannot be a change of custody to her unless she can also demonstrate that the father has become an unfit custodian or has abandoned the child. In my opinion, this result is not necessarily in the best interests of the child and is an unjust and extremely harsh one with respect to this mother. The record indicates that she had a very unhappy and unproductive childhood because of circumstances beyond her control. Although she became pregnant when she was only 15 years of age, it is significant that rather than have an abortion, she gave birth to this child and has cared for him to the best of her ability under most difficult conditions for a substantial period of time without any harmful effects on the child. Under these circumstances, it is my view that before there is an irrevocable award of custody to the father, there should be a hearing at which expert testimony can be adduced to sustain a conclusion that the best interests of the child would be served by such an award.